## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| TYRON MCFADDEN | : | No. 15-376-1 |

## MEMORANDUM

PRATTER, J.                                                    NOVEMBER 15, 2021

Tyron McFadden is currently serving a 276-month sentence and seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Mr. McFadden argues that relief is warranted based on ineffective assistance of counsel, prosecutorial misconduct, and Due Process violations.[1] The Government opposes the motion. For the following reasons, the Court will deny Mr. McFadden's *pro se* § 2255 motion without an evidentiary hearing.

### BACKGROUND

Mr. McFadden led a conspiracy to bring large quantities of cocaine and marijuana to the Philadelphia area from 2009 to 2015. In May 2016, Mr. McFadden and eight co-defendants were charged with drug offenses in a 12-count superseding indictment. Mr. McFadden was charged with the following counts: conspiracy to distribute 5 kilograms or more of cocaine and 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. § 846; possession with intent to distribute 500 grams of more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); distribution

---

[1] After Mr. McFadden filed his initial § 2255 motion on an incorrect form, the Court ordered the Clerk of Court to provide him with the current standard form and instructed Mr. McFadden to complete, sign, and return the new form. Mr. McFadden did so, but did not attach the memorandum of law that he had included with his initial motion. Because Mr. McFadden references this memorandum in his most recent § 2255 motion (under the supporting facts section of each ground for relief Mr. McFadden states "See: [pages from] Petitioner's Memorandum of Law"), and because the Government responded to Mr. McFadden's arguments in the memorandum, the Court considers Mr. McFadden's memorandum as if it were also attached to his most recent motion.

of 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B); distribution of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D); and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h).  Among Mr. McFadden's co-defendants were Brandon Mayes; his sister, Tedkieya McFadden; and his brothers, Talli McFadden and Theodore McFadden.  Mr. McFadden was represented by three attorneys:  Tariq El-Shabazz (appearance entered October 23, 2015), Qawi Abdul-Rahman (October 2, 2016), and Hope Lefeber (March 23, 2017).[2]

In May 2017, pursuant to a written plea agreement, Mr. McFadden pled guilty to all counts. The agreement acknowledged, among other things, that "he was a manager or supervisor" of a drug distribution conspiracy that "involved five or more participants or was otherwise extensive." Doc. No. 409-1 ¶ 9(b).  The agreement signed by Mr. McFadden also stated that he was "satisfied with the legal representation provided by [his] lawyer" and provided that, in exchange for the benefit he was receiving under the agreement, Mr. McFadden was waiving his right to challenge his sentence on appeal or collateral review (with some limited exceptions).  *Id.* ¶¶ 12, 15.  This was confirmed expressly by the Court during the plea hearing while Mr. McFadden was under oath.  May 15, 2017 H'rng Tr. at 14:21–23; 29:8–30:22 (repeating same).

In October 2018, the Court sentenced Mr. McFadden to 276 months of imprisonment to be followed by 10 years of supervised released, a fine of $2,400, and a special assessment of $800. Mr. McFadden did not file a direct appeal.  In October 2019, he filed his initial motion under § 2255 and then filed another motion on the correct form the following month.  Mr. McFadden asks the Court to vacate his conviction or, in the alternative, grant an evidentiary hearing.  Doc. No. 684, at 12.

---

[2] The docket does not suggest that any of these three attorneys have withdrawn their appearance for Mr. McFadden, although he filed his § 2255 motion *pro se*.

## LEGAL STANDARD

A prisoner in federal custody may move to vacate, set aside, or correct his sentence on the basis that the sentence was "imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner may only prevail on a § 2255 habeas claim by demonstrating that an error of law was constitutional, jurisdictional, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428 (1962).

A petitioner who did not raise an objection at trial must show either (1) actual innocence or (2) "cause" excusing his procedural default and "'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 168–70 (1982); *see also Parkin v. United States*, 565 F. App'x 149, 151 (3d Cir. 2014) (non-precedential) ("[W]here a defendant has failed to raise a claim on direct review, the claim may be raised in habeas only if the defendant can demonstrate either cause and prejudice, or actual innocence.").

Ineffective assistance of counsel may provide the cause necessary to overcome a procedural default. *Hodge v. United States*, 554 F.3d 372, 378–79 (3d Cir. 2009). In *Strickland v. Washington*, the United States Supreme Court established a two-pronged test for reviewing claims for ineffective assistance of counsel. 466 U.S. 668, 687 (1984). "A petitioner must prove both (1) that 'counsel's representation fell below an objective standard of reasonableness' and (2) that petitioner was prejudiced by that subpar performance." *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 544 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 688). To establish prejudice for the purposes of an ineffective assistance of counsel claim, "[t]he likelihood of a different result

3

must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).  In the context of guilty pleas, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Under § 2255, "the District Court [is] required to grant an evidentiary hearing unless the record before it 'conclusively show[s]' that [the petitioner] was not prejudiced" by his counsel's assistance. *United States v. McCoy*, 410 F.3d 124, 132 (3d Cir. 2005).  When considering whether to hold an evidentiary hearing, "a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  The Third Circuit Court of Appeals has "instructed district 'courts [to] focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim.'" *Morris v. Beard*, 633 F.3d 185, 196 (3d Cir. 2011) (quoting *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000)).  In other words, the petitioner must "make a '*prima facie* showing' that 'would enable him to prevail on the merits of the asserted claim.'"  *Id.* at 196 (quoting *Palmer v. Hendricks*, 592 F.3d 386, 393 (3d Cir. 2010)).

Mr. McFadden has filed his § 2255 petition *pro se*.  "The court is to construe a prisoner's *pro se* pleading liberally." *United States v. Sotomayor*, 146 F. Supp. 3d 667, 668 (E.D. Pa. 2015) (citation omitted).

## DISCUSSION

Mr. McFadden raises four claims for ineffective assistance of counsel in his motion.  Mr. McFadden challenges his counsel's alleged failure to 1) conduct an adequate pre-trial investigation; 2) notify the Court of an alleged conflict of interest; 3) advise Mr. McFadden as to

three conspiracy-related legal issues; and 4) object to certain sentencing calculations. Mr. McFadden also raises a claim of prosecutorial misconduct based on the conflict of interest claim and a Due Process challenge based on the sentencing calculations claim. The Court will discuss each claim in turn.

## I.      Pre-Trial Investigation

First, Mr. McFadden alleges that his counsel failed to conduct an adequate pre-trial investigation. Mr. McFadden asserts that his counsel demonstrated an "appalling failure to make sufficient efforts to adequately investigate and prepare for certain issues directly related to defendant's defense prior to and after defendant plead guilty." Doc. No. 680, at 17. Mr. McFadden complains that his counsel did not hire a private investigator to "interview potential witnesses, obtain possible evidence and assist in other ways" despite the fact that he "tried to get his attorney an investigator" for this purpose. *Id.* He identifies two "critical steps" in this alleged failure: "refusal to use a family paid investigator of Petitioner's choice" and/or "to request funds for the retention of an investigator under 3006(A)." *Id.* at 18.

"For a failure to investigate to constitute ineffective assistance, a defendant must show what exculpatory evidence would have been uncovered by further investigation." *United States v. Williams*, 166 F. Supp. 2d 286, 306 (E.D. Pa. 2001). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lewis v. Mazurkiewicz*, 915 F.2d 106, 115 (3d Cir. 1990) (quoting *Strickland*, 466 U.S. at 694).

Mr. McFadden does not explain how this alleged failure affected the outcome of his case. He asserts that "[h]ad his counsel made sufficient efforts to effectively represent Mr. McFadden, he would have had significant opportunities to severely weaken the Government's case and offer

a strong viable defense or to negotiate a better plea deal." Doc. No. 680, at 23. However, Mr. McFadden does not explain how "the failure to investigate caused counsel to be insufficiently prepared for trial." Doc. No. 680, at 21. He does not identify any exculpatory information that would have been uncovered through use of a private investigator. *See Duncan v. Morton*, 256 F.3d 189, 201–02 (3d Cir. 2001) (no prejudice where petitioner offered no evidence of what witness would have said if interviewed). To the extent that further investigation could "offer a strong viable defense" based on the entrapment allegations discussed *infra*, Mr. McFadden identifies no facts that would make the entrapment defense viable.[3]

Mr. McFadden's ineffective assistance of counsel claim based on the pre-trial investigation fails to establish the required prejudice for such a claim.

## II.   Conflict of Interest

Next, Mr. McFadden argues that his counsel failed to disclose conflicts of interest based on their prior representation of his co-defendants in unrelated proceedings. For purposes of this motion, the Court assumes that Mr. McFadden's allegations are true. As Mr. McFadden observes, his family and friends present a "sordid history" of interrelated criminal activity and family attorneys representing "all his siblings" on assorted charges over a span of two decades. Doc. No. 680, at 20–21. Mr. McFadden explains that he "regularly relied on the El Shabazz Law Firm to handle legal matters on behalf of all of us, or give us sound legal advice at sometime throughout the years (notably these federal charges are the first time we all became codefendants in a single indictment)." Doc. No. 703, at 1. Mr. McFadden argues that his lawyers used his information "which unfairly assisted them in Tedkieya McFadden's, Talli McFadden's, Jimmy Young's,

---

[3] Notably, Mr. McFadden does not aver that he was unaware of who had previously served as government informants at the time of his plea bargain. To the extent the proposed testimony of government informants motivated his decision to enter a guilty plea, a private investigator was not necessary to uncover these facts prior to his plea bargain or his on-the-record embrace of the plea agreement.

Brandon Mayes' and Richard Robinson's defense by it being used to help them shift blame on to this Petitioner." Doc. No. 680, at 20.

Specifically, Mr. McFadden asserts that Ms. Lefeber had previously represented his codefendants (and siblings), Tedkieya McFadden and Talli McFadden, in drug cases in 2001 and 2004, respectively.[4]  *Id.* at 18.  Mr. McFadden also states that Mr. El-Shabazz previously represented co-defendant Brandon Mayes.[5]  *Id.*  The government represents that court records show prior representation of Mr. Mayes by Mr. El-Shabazz in state cases in 2002, 2007, and 2008, and Mr. McFadden does not contest this characterization.  Doc. No. 698, at 35.  Mr. McFadden also asserts that his past attorneys represented Mr. Robinson and Mr. Young in other past cases. Doc. No. 680, at 20.

The Court finds that Mr. McFadden has not alleged prejudice sufficient to establish an ineffective assistance of counsel claim as to either his claims based on a conflict of interest or prosecutorial misconduct.  The Court addresses each in turn.

**A.  Actual Conflict**

The Court first notes that representation of co-defendants in past cases by counsel also retained by Mr. McFadden in the past are not relevant to any actual conflicts of interest infecting the current drug-distribution related charges at issue here.  Mr. McFadden focuses primarily on one of his attorneys in this case, Ms. Lefeber.  He argues that Ms. Lefeber's prior representation of Tedkieya McFadden and Talli McFadden created an actual conflict of interest.  Doc. No. 680,

---

[4] Tedkieya McFadden's counsel of record in the instant case were Caroline A. Goldner Cinquanto (CJA appointment) and Paul J. Hetznecker.  Talli McFadden's counsel of record in the instant case were Caroline A. Goldner Cinquanto (CJA appointment), Christopher D. Warren, Susan Buck, and Dennis J. Cogan (terminated Oct. 16, 2019).

[5] Brandon Mayes's counsel of record in the instant case were Peter Goldberger, Stephen J. Britt, and Bobby Hoof.

at 19.[6]   An actual conflict is one that "actually affected the adequacy of [petitioner's]

representation." *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980). "'[A]n actual conflict of interest'

mean[s] precisely a conflict that affected counsel's performance—as opposed to a mere theoretical

division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 172–73 (2002). "An actual conflict of

interest is evidenced if, during the course of the representation, the defendants' interests diverge

with respect to a material factual or legal issue or to a course of action." *United States v. Gambino*,

864 F.2d 1064, 1070 (3d Cir. 1988) (internal quotation marks omitted).

Multiple representation does not automatically establish an actual conflict of interest. *See*

*Cuyler*, 446 U.S. at 348. "[A]n actual conflict is more likely to occur in cases of joint

representation—representation of more than one defendant at the same trial—rather than simply

multiple representation—representation of defendants in different trials." *United States v. Morelli*,

169 F.3d 798, 810 (3d Cir. 1999); *see also Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir. 1988)

("Generally, it is more difficult to show an actual conflict resulting from successive rather than

simultaneous representation."). The Supreme Court has noted that "the Federal Rules of Criminal

Procedure treat concurrent representation and prior representation differently, requiring a trial

court to inquire into the likelihood of conflict whenever jointly charged defendants are represented

by a single attorney (Rule 44(c)), but not when counsel previously represented another defendant

---

[6]  In his reply, Mr. McFadden also states that had he "known that Brandon Mayes was going to be a witness
against the Petitioner in this case Petitioner would not have hired Tariq El Shabazz as counsel." Doc. No.
703, at 2. Mr. McFadden does not explain how the representation of Brandon Mayes by the law firm
frequently retained by his family, in state court more than a decade prior to this case would establish an
actual conflict. He also does not explain how there could be a period during which the Government's
planned use of Brandon Mayes as a witness influenced his decision to plead guilty but he was
simultaneously unaware that Brandon Mayes was going to be a witness for purposes of trusting Mr. El-
Shabazz as his counsel. Mr. McFadden also seeks to invalidate Mr. Mayes's purported contract with the
Government as an informant based on Mr. Mayes allegedly kidnapping and robbing a "traffic lawyer Mr.
Walker in 2009." Doc. No. 703, at 1. The Court will not address these allegations since they are not
relevant to Mr. McFadden's claims for § 2255 relief.

in a substantially related matter, even where the trial court is aware of the prior representation." *Mickens*, 535 U.S. at 175. The Third Circuit Court of Appeals has established a standard for determining whether "cases involving multiple but not joint representation" present an actual conflict:

> In order to establish an actual conflict the petitioner must show two elements. First, he must demonstrate that some plausible alternative defense strategy or tactic might have been pursued. He need not show that the defense would necessarily have been successful if it had been used, but that it possessed sufficient substance to be a viable alternative. Second, he must establish that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.

*Morelli*, 169 F.3d at 810 (quoting *Gambino*, 864 F.2d at 1070).

For example, in *Morris v. Beard*, 633 F.3d 185 (3d Cir. 2011), the defendant's counsel also represented his brother, another suspect for the same murder, in an unrelated civil matter. Notably, witnesses had actually identified the brother as the shooter, the defendant's counsel failed to investigate the defendant's asserted alibi, and the defendant's counsel stood to benefit financially from the brother's civil matter seeking monetary damages. *Id.* at 189. The Third Circuit Court of Appeals upheld the district court's decision to hold an evidentiary hearing based on this prima facie case of an inherent conflict, but remanded for an additional hearing to determine "critical issues of material fact [that] remain as to whether the alternative strategy of blaming [the brother] for the shooting was plausible under the circumstances" because the attorney suggested that the defendant "would not have allowed him to portray [the brother] as the shooter at trial." *Id.* at 197, 199.

Mr. McFadden does not allude to any alternative defense strategy or tactic that counsel did not pursue and that "inherently" conflicted with his counsel's purported loyalty to another client. Mr. McFadden only argues that the alleged conflicts caused his counsel to provide supposedly

9

incorrect legal advice. Doc. No. 703, at 5. For the reasons explained in this Court's analysis of his next claim, *infra*, none of the advice challenged was incorrect. Absent incorrect legal advice about the merits of his claim, Mr. McFadden asserts no basis upon which this Court could find that a potential conflict adversely affected his representation.

In addition, McFadden generally alleges "counsel's inaction in the face of an actual conflict" harmed him by encouraging him to enter into the plea bargain, Doc. No. 703, at 8,[7] and that he "didn't benefit anything and the only people benefitted were the lawyers and the Government," Doc. No. 680, at 19. But Mr. McFadden does not maintain that he would have gone to trial but for the ineffective assistance of counsel. *See Hill*, 474 U.S. at 59. Nor does Mr. McFadden explain how either the lawyers or the Government benefitted from the alleged conflict. Unlike *Morris*, Mr. McFadden does not provide a basis on which this Court could infer that his counsel stood to benefit financially ore reputationally from loyalty to another client.

Mr. McFadden does argue that two of his three attorneys would not have been able to cross-examine certain former clients at trial. However, this does not establish prejudice because Mr. McFadden pled guilty before trial. Unlike *Morris*, where the defendant and his brother were suspects for the same murder, Mr. McFadden does not assert that any of his co-defendants benefitted from his own guilty plea, particularly given that he pled guilty to a conspiracy that actually implicated his siblings.

---

[7] Mr. McFadden also alleges that his counsel were deficient in "not calling any witnesses to fight against the government's witness," but there was not a trial at which his counsel would call witnesses. *See* Doc. No. 703, at 9. To the extent that Mr. McFadden refers to witnesses at his sentencing hearing, he does not explain how calling any of his co-defendants would have affected his sentence beyond asserting that he wanted to raise the entrapment-related issues. *Id.* at 6. Because the entrapment defense was not viable and his sentencing was based on acceptance of responsibility for the offenses, *see* Section III, *infra*, calling his co-defendants as witnesses would not have "affected the outcome of his sentencing." *Williams v. Taylor*, 529 U.S. 362, 396 (2000).

To the extent that Mr. McFadden seeks to argue that he was unfairly set up as the leader of the organization to obtain more lenient sentences for his counsel's previous clients, this argument is belied by the record. Mr. McFadden's counsel was effective in reducing his sentence enhancement for his leadership role, obtaining a lesser "manager or supervisor" classification. *Compare* Doc. No. 596, at 4 (explaining applicability of leadership designation to Mr. McFadden's conduct) *with* May 15, 2017 H'rng Tr. at 17:21–22 ("The defendant agrees that he was a manager or supervisor, but not an organizer or leader . . . ."). Further, the Government provides extensive evidence demonstrating that Mr. McFadden was in fact a supervisor of his siblings' activities. *See, e.g.*, Doc. No. 698, at 10–11 (describing how Mr. McFadden directed Tedkieya McFadden not to move Talli McFadden's possessions after a 2011 arrest because he wanted to continue to use Talli McFadden's apartment for drug operations).

A petitioner that fails to establish prejudice for the purposes of an actual conflict also fails to establish prejudice under the second prong of the *Strickland* standard for ineffective assistance of counsel claims. *See United States v. Parr*, 1993 WL 311765, at *3 (E.D. Pa. Aug. 9, 1993), *aff'd*, 22 F.3d 304 (3d Cir. 1994) ("A conflict of interest must be 'actual' and not 'potential' or 'hypothetical,' to warrant post-conviction relief" under *Strickland*.) (citing *Cuyler*, 446 U.S. at 335). While Mr. McFadden has raised a potential conflict based on prior representation, the Court finds that Mr. McFadden has failed to establish a prima facie case of an actual conflict. Therefore, the Court rejects Mr. McFadden's ineffective assistance of counsel claim on the basis of potential conflicts of interest.

## B. Prosecutorial Misconduct

Mr. McFadden also asserts that the Government knew about his counsels' prior representations of his co-defendants and failed to disclose this issue to the Court. He claims that

this establishes prosecutorial misconduct. As noted above, this Court assumes that this allegation is true for the purposes of this motion.[8] "The Supreme Court has held that prosecutorial misconduct is insufficient to overturn a conviction unless it 'so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Reid v. Beard*, 420 F. App'x 156, 159 (3d Cir. 2011) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Where the conviction is based on a guilty plea, the Court must consider whether the defendant voluntarily pled guilty based on adequate notice of the offense to which he pleaded guilty. *Henderson v. Morgan*, 426 U.S. 637, 647 (1976).

Both defense attorneys and prosecutors have an ethical obligation to disclose potential conflicts to the court. *Morris*, 633 F.3d at 189 n.2. However, as the Supreme Court noted in *Mickens v. Taylor*, "the Federal Rules of Criminal Procedure treat concurrent representation and prior representation differently," requiring courts to affirmatively raise and discuss potential conflicts only in the case of joint representation in the same case. 535 U.S. at 175. Indeed, the cases cited by Mr. McFadden involve either concurrent representation (as opposed to prior representation) or an attorney whose conflict stems from their own self-preservation interest because they are personally implicated in the charges. *See United States v. Carr*, 322 F. Supp. 3d 612, 620 (E.D. Pa. 2018) (finding that "there is a serious potential conflict of interest created by Griffin's concurrent representation of Carr and Client No. 1"); *United States v. Lacerda*, 929 F.

---

[8] Although Mr. McFadden does not raise it in his reply, the Court notes that the Assistant U.S. Attorney representing the Government in this case became a United States District Judge for the Eastern District of Pennsylvania after the McFadden proceedings at issue. In light of the Court's duty to assess its own potential conflicts, the Court has done so and finds that recusal in favor of reassignment to another federal district court is not warranted to resolve the purely legal question raised in Mr. McFadden's prosecutorial misconduct claim, given this late stage in the proceedings and, of greater import, because of the lack of merit of the argument. *See Martin v. Monumental Life Ins. Co.*, 240 F.3d 223, 237 (3d Cir. 2001) ("We also believe that there must be a more compelling standard for recusal under § 455(a) after the conclusion of a trial than before its inception.").

Supp. 2d 349, 358 (D.N.J. 2013) (noting counsel's conflict "placing his personal interest in self-preservation in direct juxtaposition to his client's interest in loyal and unbiased representation" where counsel also "faces a serious potential conflict because he legitimately may be called as a witness").

In contrast to concurrent representation, the failure to disclose a potential conflict based on prior representation is not a ground for reversing a conviction or vacating a sentence. *United States v. Morelli*, 169 F.3d 798, 812 (3d Cir. 1999) ("[W]e do not hold, that a prosecutor's—or a defense attorney's—failure in this respect is grounds for reversal. Since [the petitioner] makes no claim that the District Court was or should have been aware of [counsel's] potential conflict, he is not entitled to a reversal on these grounds."); *see also Mickens*, 535 U.S. at 170–72 (noting that *Cuyler* requires petitioners to establish an actual conflict even if the alleged conflict was not disclosed during trial proceedings).

Mr. McFadden did not raise his claim on direct appeal and does not allege actual innocence, so he must show "'actual prejudice' resulting from the errors of which he complains." *Frady*, 456 U.S. at 168. Mr. McFadden laments hiring two of his three attorneys but does not assert any factual basis for the Court to conclude that failure to disclose his counsels' prior representations "infected" his plea bargain. *See Reid*, 420 F. App'x at 159. Because Mr. McFadden does not establish actual prejudice, the Court finds that his claim of prosecutorial misconduct for failure to disclose a potential conflict does not establish a basis for habeas relief.

## III.   Incorrect Advice

Mr. McFadden also raises ineffective assistance of counsel claims based on purported incorrect legal advice. "There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument." *United States v. Sanders*, 165 F.3d 248,

253 (3d Cir. 1999). This is because "trial counsel could not have been ineffective under *Strickland* for failing to raise it." *Waller v. Varano*, 562 F. App'x 91, 95 (3d Cir. 2014).

Mr. McFadden asserts that counsel provided three types of incorrect legal advice: 1) that counsel incorrectly told him that the government can establish a conspiracy based only on his agreement with a confidential informant; 2) that counsel incorrectly told him that evidence of individual drug sales alone can be used to establish a conspiracy; and 3) that counsel refused to consider an entrapment defense. However, each of Mr. McFadden's arguments fails because they would have been meritless if Mr. McFadden's counsel had pursued them.

## A. Conspiracy Involving Confidential Informants

First, even if counsel did incorrectly tell Mr. McFadden that the Government could have established a conspiracy based only on an agreement with a confidential informant, there cannot be prejudice because Mr. McFadden pled guilty to a conspiracy with multiple people besides the purported informants. Mr. McFadden alleges that, at some point, Richard Robinson and Brandon Mayes became confidential informants. Doc. No. 680, at 27. A defense under the *Sears* rule requires showing that the only co-conspirator was a government agent because "it takes two to conspire." *United States v. Sears*, 343 F.2d 139, 142 (5th Cir. 1965); *see also United States v. Garner*, 915 F.3d 167, 170 (3d Cir. 2019) ("merely conspiring with . . . a government informant, would not make [the defendant] criminally liable"). The *Sears* rule recognizes that there cannot be a conspiracy where there is only one person with criminal intent. However, Mr. McFadden was convicted for a conspiracy involving five or more people. *See* Doc. No. 409 ¶ 9(b). Even if two of those five people were in fact government informants the entire time, the *Sears* rule would not be applicable because the three others could still engage in a conspiracy. Because Mr. McFadden

pled guilty to conspiring with others in addition to the two purported government informants, the *Sears* rule argument is meritless.

### B. Conspiracy Based on Individual Drug Sales

Next, Mr. McFadden argues that counsel incorrectly told him that evidence of individual drug sales alone can be used to establish a conspiracy. Mr. McFadden maintains that his counsel should have pursued a "buyer-seller" defense. Doc. No. 703, at 8. However, the buyer-seller rule only "shields mere acquirers and street-level users, who would otherwise be guilty of conspiracy to distribute, from the more severe penalties reserved for distributors." *United States v. Delgado*, 672 F.3d 320, 333 (5th Cir. 2012). The Court found that Mr. McFadden engaged in far more than sales to street-level users; he arranged deposits for "tens of thousands of dollars" in particular banks, organized the movement of drugs from California to Philadelphia, and arranged for storage of drugs in California apartments. Doc. No. 596, at 3. Mr. McFadden admitted to facts that clearly establish more than mere acquisition and street-level use. Like the *Sears* rule, the buyer-seller defense would have been meritless, and therefore Mr. McFadden suffered no prejudice.

### C. Entrapment Defense

Lastly, Mr. McFadden argues that his counsel improperly refused to consider raising an entrapment defense. He alleges that he was "entrapped" because Richard Robinson, an alleged government informant, "badgered him to sell him cocaine rather than marijuana, against [Mr. McFadden's] wishes." Doc. No. 680, at 27. "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59. "[S]trategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments

on which they are based." *Strickland*, 466 U.S. at 681. Again, Mr. McFadden's argument fails for several reasons.

First, in arguing that counsel ignored his requests to investigate an entrapment defense, Mr. McFadden appears to make a "sentencing entrapment" argument, which "occurs when official conduct leads an individual otherwise indisposed to dealing in a larger quantity or different type of controlled substance to do so, and the result is a higher sentence." *United States v. Sed*, 601 F.3d 224, 230 (3d Cir. 2010) (internal quotation marks omitted). "A defendant asserting sentencing entrapment argues that, although predisposed to commit a minor or lesser offense, he has been entrapped into committing a greater offense subject to greater punishment." *United States v. Moffitt*, 797 F. App'x 708, 713 (3d Cir. 2020) (internal quotation marks omitted). Fatal to Mr. McFadden's argument, however, is the fact that "[n]either the Supreme Court nor the Third Circuit has yet endorsed a sentencing entrapment defense." *Id.*; *see also United States v. Baird*, No. 20-2262, 2021 WL 3612161, at *2 (3d Cir. Aug. 16, 2021) ("While our sister courts of appeals are split on the validity of sentencing entrapment and manipulation, this Court has 'neither adopted nor rejected the[se] doctrines.'") (quoting *Sed*, 601 F.3d at 229). It would not be unreasonable for counsel to reject the sentencing entrapment variation of the defense where neither the Third Circuit Court of Appeals nor the Supreme Court have accepted this defense.[9]

---

[9] Even if courts in the Third Circuit did accept the sentencing entrapment theory, Mr. McFadden does not specify a particular sale for which he was "entrapped" into selling cocaine by Mr. Robinson. The Court notes that Mr. McFadden purports to quote recordings from, at the earliest, December 23, 2010, in which he tells Mr. Robinson "'I'm not f****ing with the white sh*t at all Rich, and you should not be trying to influence me to because that's a no-no.' (referencing cocaine)." Doc. No. 703, at 6 (quoting "Woodpecker 122310.002 way 34:05 to 35:05"). However, Mr. McFadden pled guilty to purchasing "kilograms of cocaine in addition to marijuana from source of supply Wilson Sibrian" as early as April 2010 and again on August 15, 2010. Doc. No. 176 ¶¶ 12, 41. Both sales pre-date the alleged "badgering" by Mr. Robinson. The Superseding Indictment documents continuing sales of cocaine through August 20, 2015. *Id.* ¶ 125.

To the extent Mr. McFadden argues that counsel should have considered the more traditional entrapment defense, Mr. McFadden entirely ignores the predisposition element of an entrapment defense. "Predisposition, the principal element in the defense of entrapment, focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." *Matthews v. United States*, 485 U.S. 58, 63 (1988) (internal quotations and citations omitted). Mr. McFadden has admitted to coast-to-coast distribution of marijuana and cocaine over a six-year span. The Court found that the "record was clear that the criminal activity at issue was extensive" and that Mr. McFadden "functioned as a leader in the activity." Doc. No. 596, at 3. In other words, it would strain reason to consider Mr. McFadden an "unwary innocent." As a result, his counsel's professional judgment that an entrapment defense would not help Mr. McFadden's defense and counsel's strategic decision not to advance this defense was reasonable.

In addition to failing to establish that his counsel's conduct was unreasonable, Mr. McFadden fails to establish prejudice. Mr. McFadden argues that counsel should have pursued an entrapment theory based on Mr. McFadden's alleged reluctance to expand to cocaine sales. But courts have noted that an entrapment defense tends to be harmful in the context of plea bargain negotiations. Pursuing the entrapment argument at sentencing "increas[es] the potential for a higher sentence than Petitioner received by counsel focusing on [his] acceptance of responsibility . . . ." *Kelley v. United States*, No. 19-cv-4926, 2021 WL 3080945, at *4 (D.N.J. July 21, 2021). Blaming an alleged government informant for entrapment would be strategically inconsistent with demonstrating acceptance of responsibility for his offense. *See United States v. Jackson*, 827 F. App'x 209, 212 (3d Cir. 2020) ("Ordinarily a claim of entrapment at trial seems to be the antithesis

of the acceptance of responsibility.") (quoting *United States v. Demes*, 941 F.2d 220, 222 (3d Cir. 1991)).

Here, Mr. McFadden and the prosecution "agree[d] and stipulate[d] that, as of the date of [the plea] agreement, the defendant has demonstrated acceptance of responsibility for his offense, making the defendant eligible for a 2-level downward adjustment under USSG § 3El. l(a)." Doc. No. 409-1 ¶ 9(c). At his sentencing hearing, Mr. McFadden further testified that he understood that he received the two-level downward adjustment for "demonstrat[ing] acceptance of responsibility for his offense." May 15, 2017 H'rng Tr. at 18:9–13; 21:14–16. Given the record of Mr. McFadden's strong predisposition, Mr. McFadden's entrapment argument is particularly antithetical to acceptance of responsibility. Thus, Mr. McFadden's argument that his trial counsel should have pursued an entrapment defense also fails to establish prejudice—or otherwise indicate a division of loyalties for conflict-of-interest purposes—because Mr. McFadden's alternate theory of the case could have *increased* his sentence.

A reasonable, unbiased attorney could strategically focus on an acceptance-of-responsibility sentencing reduction—particularly where an entrapment defense is far from guaranteed to succeed. Therefore, an entrapment defense does not provide a basis for Mr. McFadden's ineffective assistance of counsel claim.

## IV.   Sentencing Calculations

Lastly, Mr. McFadden asserts that his counsel failed to object to errors in his sentencing calculations. Mr. McFadden argues that counsel should have objected to 1) one criminal history point for probation related to a state charge; 2) three criminal history points for his prior counterfeiting charge; 3) four criminal history points for being convicted while on supervised release and probation; and 4) lack of credit for time served on other matters. Because Mr.

McFadden is incorrect about each of these alleged errors, his counsel was not ineffective for failing to object to each issue.

Mr. McFadden first challenges a criminal history point based on a prior conviction for "a state charge for reckless endangerment" because "Mr. McFadden didn't do any jail time at all, he only received 9 months of probation." Doc. No. 680, at 23.[10] However, the sentencing guidelines provide for one criminal history point for prior sentences not otherwise described. U.S.S.G. § 4A1.1(c). A sentence of probation is treated as a sentence for these purposes. *See* 4A1.2(c)(1), Application Note 2. Thus, the criminal history point based on Mr. McFadden's probation for the state charge is correct.

Next, Mr. McFadden challenges the allocation of three sentencing points for his counterfeiting conviction "because he did a year and a day for the violation." Doc. No. 680, at 23. Sentences exceeding one year and one month receive three criminal history points under U.S.S.G. § 4A.1(a). However, Mr. McFadden incorrectly characterizes his counterfeiting sentence. He was originally sentenced to five months and then, after a violation of supervised release, he received an *additional* year and a day, for a total sentence of 17 months and a day. Pre-Sentence Rep. ¶ 176. Because Mr. McFadden did receive a sentence of over one year and a day, he was properly assigned three criminal history points for the counterfeiting conviction.

Mr. McFadden also challenges the purported allocation of "2 points for being on supervised release and 2 points for being convicted . . . while on probation" because "his counterfeit charge was part of this charge so it was being counted twice." Doc. No. 680, at 23. However, he was assigned only two points for committing the drug distribution-related offenses while under a sentence for his counterfeiting charge, and no points for committing the drug distribution-related

---

[10] The Government characterizes the charge as "fleeing or attempting to elude officer." Doc. No. 698, at 40.

offenses while on probation.  Pre-Sentence Rep. ¶ 178.  Mr. McFadden did not receive *four* points

for committing the offenses while under his prior counterfeiting sentence; he received five points

for his criminal history and an additional two points for committing the drug-distribution offenses

while under a prior sentence.  *Id.*  Because he appropriately received two points for committing

the drug-distribution related offenses while under a prior sentence, this challenge also fails.

Lastly, Mr. McFadden requests time credit for 22 months served on a related state charge

and a previous unrelated federal counterfeiting charge.  Doc. No. 680, at 24.  While "district courts

do not have jurisdiction to hear an application for credit for time served until a defendant has

exhausted his administrative remedies by seeking credit from the Bureau of Prisons and Attorney

General," the Court will briefly address this argument as it relates to the ineffectiveness of counsel

claims.  *United States v. Romero*, 348 F. App'x 803, 805 (3d Cir. 2009).  Mr. McFadden received

an obstruction of justice sentencing enhancement for "instructing his associates to lie about the

responsibility for" state court drug charges related to the same conduct at issue in this case.  Doc.

No. 596, at 16.  Mr. McFadden argues that he was later acquitted in the state case, so he should

receive a sentencing credit for time served in state custody for this charge.  However, Mr.

McFadden's defense counsel already pursued a related argument against the obstruction

enhancement for his activity related to the state charge and this Court ruled specifically on the

obstruction issue.[11]  Even if counsel had advocated specifically for time credit based on the

underlying state sentence, "[t]he assessment and application of credit for time served is to be made

by the Attorney General, through the Bureau of Prisons, in accordance with 18 U.S.C. § 3585."

---

[11] Mr. McFadden previously argued at sentencing that "the Government makes too large of an assumption by presuming that he would have been convicted of the state court charges absent his obstruction of justice." Doc. No. 596, at 18.

*See United States v. Morgan*, No. 03-cv-3856, 2003 WL 22245138, at \*7 (E.D. Pa. Aug. 6, 2003).

Mr. McFadden's counsel was not ineffective in this regard.

Mr. McFadden also seeks credit for time he spent in a halfway house and on house arrest from 2009 to 2010 and 2010 to 2011, respectively. Doc. No. 680, at 24. However, this time was related to his federal counterfeiting charge, which was unrelated to the drug distribution charges at issue here. There was no basis to credit time served on a prior unrelated sentence. *See United States v. Gayton*, 300 F. App'x 173, 175 (3d Cir. 2008). Thus, Mr. McFadden's counsel was not ineffective on this time credit issue either.

### CONCLUSION

For the foregoing reasons, the Court denies Mr. McFadden's motion to vacate, set aside, or correct his sentence under § 2255. Mr. McFadden asserts no "factual allegations, which, if true, would entitle him to federal habeas relief." *Schriro*, 550 U.S. at 474. Because the record conclusively shows that he was not prejudiced by his counsel's assistance or other alleged errors, the Court denies Mr. McFadden's request for an evidentiary hearing.

When issuing a final order denying a § 2255 motion, the Court must also determine whether a certificate of appealability should issue. 28 U.S.C. § 2253(c)(2). Because the Court finds that Mr. McFadden has not demonstrated a substantial denial of a constitutional right, a certificate will not issue. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE